<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

WILMER EDUARDO VERA-VELEZ,

      Petitioner,

      v.

LUIS SOTO *et al.*,

      Respondents.

No. 26cv1480 (EP) (MAH)

**OPINION**

---

**PADIN, District Judge.**

This matter comes before the Court upon Petitioner Wilmer Eduardo Vera-Velez's Motion to Enforce Judgment in this habeas proceeding under 28 U.S.C. § 2241. D.E. 4 ("Motion to Enforce"). Respondents filed a brief in opposition to Petitioner's Motion to Enforce, D.E. 6 ("Opp. Br."), and Petitioner filed a letter in reply, D.E. 9 ("Reply").

The Court decides the Motion to Enforce without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons discussed below, the Court will **GRANT** Petitioner's Motion to Enforce and order Respondents to provide Petitioner with a bond hearing before a different immigration judge to determine whether his continued civil detention is justified by a determination that he presents a flight risk or danger to the community.

## I.    BACKGROUND

On February 13, 2026, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, in which he alleged he was unlawfully detained by immigration authorities under 8 U.S.C. § 1225(b) without a bond hearing. D.E. 1 ("Petition"). On February 17, 2026, the Court conditionally granted the Petition and ordered Respondents to provide Petitioner with an individualized bond hearing before an immigration judge to assess whether Petitioner presents a

flight risk or a danger to the community pursuant to 8 C.F.R. § 236.1(c)(8), (d)(1).[1]  Text Order. On February 26, 2026, Petitioner filed the present Motion to Enforce, seeking immediate release or, alternatively, a custody hearing before this Court, or, as a last resort, a hearing before an immigration court under 8 U.S.C. § 1226(a) with additional safeguards.  Motion to Enforce at 10-12.  Petitioner contends he is entitled to this relief because his hearing under § 1226(a) before a "compromised adjudicatory body—did not properly redress the statutory and constitutional violations present in this matter."  *Id.* at 10-11.

In support of his Motion to Enforce, Petitioner acknowledges that he had a bond hearing on February 17, 2026, where he presented a lengthy evidentiary package in support of his release on bond, including letters from his common law partner, his 8-year-old son's first grade report card, a family friend's letter, a sponsor's letter, and medical evidence of an accident that left Petitioner with neurological issues.  *Id.* at 1; D.E. 4-5 ("Bond Packet").  Petitioner asserts that, if released, he would live with his wife and child in Hackensack, New Jersey.  Petition at 1. Respondents submitted one document at the bond hearing, a Form I-213, Record of Deportable/Inadmissible Alien, D.E. 4-4 ("Form I-213"), which showed Petitioner has no criminal record.  *Id.* at 2.

Petitioner also submitted an affidavit from counsel, Keren Ohana, Esq., who represented him at the bond hearing.  D.E. 4-1, Ex. A ("Ohana Aff.").  Ohana summarized the evidence offered by Petitioner in support of the conclusion that he is not a flight risk, and the reasons the

---

[1] This Court conditioned habeas relief on Respondents not contesting either Petitioner's material factual allegations or that his detention was distinguishable from the cases in this District previously addressing 8 U.S.C. § 1225(b), including but not limited to *Lomeu v. Soto*, No. 25-16589, 2025 WL 2981296 (D.N.J. Oct. 23, 2025) (interpreting § 1225(b)(2)), and *Rivas Rodriguez v. Rokosky*, No. 25-17419, 2025 WL 3485628 (D.N.J. Dec. 3, 2025) (interpreting § 1225(b)(1)). D.E. 2 ("Text Order").

immigration judge ("IJ") rejected Petitioner's request for release on bond.  *Id.* ¶¶ 9-50.  In summary, Petitioner offered evidence that he has a wife and child, and the IJ based his finding of flight risk on finding Petitioner was not married to the child's mother, his "wife" and child do not have lawful status in the United States, and Petitioner does not have U.S. citizen relatives.  *Id.* ¶¶ 9-10.  Petitioner submitted a residential lease to establish stable housing and evidence that his son is enrolled in school to establish he is not a flight risk.  *Id.* ¶¶ 13–14.  Petitioner also presented the testimony of his U.S. citizen sponsor who committed to provide housing, financial support, and to ensure Petitioner's compliance with reporting requirements.  *Id.* ¶ 15.  Petitioner submitted his record of timely filing an asylum application and compliance with all ICE check-ins and attendance at immigration court proceedings.  *Id.* ¶¶ 18-24.  He also submitted evidence that he suffered a brain injury in 2015 that caused cognitive impairment and intellectual disability, in support of a humanitarian reason favoring his release on bond.  *Id.* ¶¶ 28-33.  The IJ found this evidence unpersuasive because Petitioner had not submitted any evidence of seeking medical treatment in the United States.  *Id.* ¶ 30.  Petitioner submitted a 2024 tax return that showed low income, which Ohana asserts is attributable to his documented cognitive impairment, but the IJ concluded that Petitioner lacks work history.  *Id.* ¶ 40.  Petitioner submitted a documented job offer, but the IJ discounted it because it did not specify a job title.  *Id.* ¶¶ 38-39.  Finally, the IJ found Petitioner is a flight risk based in part on his short period of residence in the United States since 2023.  *Id.* ¶ 45.  Ohana opines that the IJ failed to give meaningful weight to compliance history, medical vulnerability, and stable residence.  *Id.* ¶ 55.  Ohana further opines, based on 15 years' experience in Immigration Court, that the IJ failed to act as a neutral and impartial adjudicator.  *Id.* ¶ 57.

Petitioner also submitted the Affidavit of Lawrence O. Burman, a retired immigration judge who served from April 1998 through December 31, 2025.  D.E. 4-1 ("Burman Aff.")

Burman opined it was his experience that it was rare for bond to be denied solely based on flight risk, instead, a higher amount of bond was usually imposed, although rarely exceeding $15,000. *Id.* ¶¶ 12, 14.  Burman also expressed concern about the ability of immigration judges to act as neutral adjudicators based on (1) the high level of turnover since January 2025; (2) conversations within the immigration bench and professional organizations, including the National Association of Immigration Judges, of which Burman was a former officer; (3) that immigration judges who demonstrate a strong commitment to due process have been removed from their positions; and (4) his concern that the notable rise in bond denials erodes confidence in the Immigration Court system. *Id.* ¶¶ 18-21.

Without citing any reasons in the Bond Order, the IJ determined there was no amount of money or alternative to detention that could secure Petitioner's attendance at future hearings. Petition at 2; D.E. 2-2 ("IJ Bond Order").

In support of his Motion to Enforce, Petitioner contends the IJ's determination is explained by the systematic destruction of judicial independence of the immigration courts under the Executive Office for Immigration Review, a sub-agency of the Department of Justice, by the following actions:

> (1) the ongoing mass-scale purge of immigration judges perceived as obstacles to DHS' enforcement agenda; (2) the parallel purge and reconstitution of the BIA, resulting in a 97% pro-government decision rate; (3) the recruitment and installation of explicitly enforcement-aligned "deportation judges" with dramatically reduced qualifications; (4) EOIR policy directives establishing expectations that adjudications favor the government over noncitizens; and (5) explicit instructions to defy district court rulings that impede DHS's enforcement goals.

Motion to Enforce at 3-10.  Petitioner relies on a series of news reports, as well as EOIR leadership's documented policy directives and instructions to immigration judges that they are not

bound by a federal court's nationwide declaratory judgment regarding an unlawful legal interpretation concerning mandatory detention. *Id.*

Respondents submitted a partial transcript of Petitioner's bond hearing on February 17, 2026, and explained that they obtained an audio recording of the hearing and had it transcribed by a court reporter; however, the audio did not capture the voice of Petitioner, his attorney, or his interpreter. D.E. 8 ("March 24, 2026 Letter"); D.E. 8-1 ("Partial Hearing Tr."). Respondents filed a letter brief in opposition to Petitioner's Motion to Enforce, contending that Petitioner received a fundamentally fair hearing. Opp. Br. at 1-3.

Respondents submit that this Court lacks jurisdiction pursuant to 8 U.S.C. § 1226(e) to review the bond determination, but acknowledge the Court has authority to determine whether the bond hearing complied with due process. *Id.* at 2. Respondents argue that Petitioner's hearing satisfied due process because he appeared at a hearing with counsel and submitted evidence and arguments, and the IJ made an individualized determination about Petitioner's bond request. *Id.* at 3. Respondents contend that pursuant to 8 U.S.C. § 1226(e), this Court may not review whether the IJ improperly weighed the evidence, the basis for Petitioner's challenge to the bond hearing. Rather, such an appeal may be made to the Board of Immigration Appeals. *Id.*

In reply, Petitioner submits that the Court is unable to meaningfully review his due process challenge to the bond hearing with a partial transcript that omits his presentation to the IJ. Reply at 2-3. Petitioner concludes that the circumstances require his immediate release or a prompt bond hearing conducted in a constitutional manner. *Id.* at 3.

## II.    LEGAL STANDARD

Pursuant to 8 U.S.C. § 1226(e), "[n]o court may set aside any action or decision by the Attorney General under this section regarding the . . . denial of bond." While this statutory

5

provision precludes review of discretionary determinations underlying the IJ's bond determination, courts may review whether a hearing was fundamentally unfair. *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022). A fundamentally fair bond hearing that complies with due process provides fact-finding based on a record before the decisionmaker; the opportunity for a petitioner to make arguments on his own behalf; and the right to an individualized determination of his or her interests. *Id.* Courts lack authority to consider allegations of improper evidence weighing. *Id.* at 3.

## III.    ANALYSIS

Here, the IJ found Petitioner presented a flight risk if released because he does not have U.S. citizen relatives, he is not married, he does not have a work history for the past two years, his letter concerning future employment does not state what he would do or in what capacity, he does not have medical records reflecting treatment for his brain injury for the past two years, and his relief application does not state a claim. Partial Hearing Tr. at 6. Without a transcript that includes statements made by Petitioner, his interpreter or his attorney at the bond hearing, it is not known whether Petitioner addressed these issues at the hearing and whether the IJ considered his arguments in making the final determination. Therefore, to ensure Petitioner receives a full and fair hearing, Petitioner must be provided a new bond hearing before a different IJ.

The evidence submitted by Petitioner suggests that immigration judges are being appointed or pressured to find in favor of detention, while not determinative of whether Petitioner was afforded due process, suggests the importance of judicial review. Due process requires a neutral adjudicator to make an individualized assessment of Petitioner's liberty interest and the legitimate government interest in Petitioner's compliance with removal proceedings and protecting the community from danger. *Ghanem*, 2022 WL 574624, at *2; *see also Zadvydas v. Davis*, 533 U.S.

678, 692 (2001) (citation modified) ("This Court has suggested . . . that the Constitution may well preclude granting an administrative body the unreviewable authority to make determinations implicating fundamental rights.").

The best evidence of whether Petitioner's bond hearing comported with due process is the full bond hearing transcript, which is unavailable because the audio recording was defective. *See Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 335 (3d Cir. 2021) ("Given the substantial individual interest in liberty, the relatively high value of additional safeguards, and the minimal burden on the Government . . . the Government [must] make "a record [of *Joseph* hearings[2]] of sufficient completeness" for "adequate and effective . . . appellate review.")

Petitioner requests that the Court impose additional safeguards if a new bond hearing is the remedy, including imposing the burden on the Government to establish flight risk or danger to the community by clear and convincing evidence. Petition at 12. The standard proposed by Petitioner has no basis in discretionary detention under 8 U.S.C. § 1226(a). "[U]nder § 1226(a) the burden remains on the detainee at all times." *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018). The appropriate safeguard is a careful review of the bond hearing transcript to determine whether the IJ made a neutral determination of flight risk or danger based on facts in the record, without usurping the IJ's discretion. This can be achieved by review for arbitrary determinations that are not supported by facts that create a reasonable inference that a petitioner presents a flight risk or danger to the community. *See, e.g., Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 79 (3d Cir. 2019) (concluding the "IJ's decision was within his sound discretion, where, among other things, "[t]he IJ expressly accounted for both Quinteros'

---

[2] A *Joseph* hearing is "a hearing before an IJ to determine whether a detainee is properly included within the scope of § 1226(c)" which defines criminal aliens who are subject to mandatory detention pending removal proceedings. *Gayle*, 12 F.4th at 330.

7

past offense and his more recent reform before denying Quinteros bond" based on a finding of danger to the community).  Accordingly, the Court will order Respondents to provide Petitioner with a new bond hearing before a different IJ.

## IV.    CONCLUSION

The Court is unable to determine whether Petitioner's bond hearing comported with due process because a full hearing transcript is unavailable.  Therefore, the Court will order Respondents to provide Petitioner with a new bond hearing.  An appropriate Order follows.


Dated: April 9, 2026

_____
Evelyn Padin, U.S.D.J.

8